# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| RUDOLPH CAREY III, | |
| Plaintiff, | |
| v. | Civil Case No. 1:21-cv-1090 |
| ALISON LAND, in her official capacity as Commissioner of the Virginia Department of Behavioral Health and Developmental Services, | |
| Defendant. | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. This is a Fourteenth Amendment challenge to a Virginia statute preventing people with convictions for any of more than 100 "barrier crimes" from working as substance-abuse counselors. There is no rational basis for this blanket, lifetime prohibition. It bars qualified counselors from working because of old and irrelevant offenses with no regard for present-day circumstances. And it counterproductively excludes people who have overcome addiction themselves from using their experiences to help others overcome addiction too. This irrational scheme does not pass even basic constitutional scrutiny.

2. Plaintiff Rudy Carey underscores this irrationality. Rudy won a battle with drug and alcohol addiction more than a decade ago. Then, after achieving sobriety himself, Rudy dedicated himself to helping others overcome addiction. He became a leader in a twelve-step program, he completed more than 200 hours of college coursework in counseling and rehabilitation, and he secured a job as a substance-abuse counselor at a treatment facility. He successfully worked there for five years. He won a counselor of the year award. But eventually his employer took another look at the prohibition. And because Rudy has a barrier crime on his record—he struck a police officer during an arrest in 2004—his employer was forced to fire him. Rudy is banned from working as a counselor for the rest of his life.

3. That is unconstitutional. Under the Fourteenth Amendment, laws must, at a minimum, be rational. It is irrational for the commonwealth to categorically prohibit every person with a wide range of convictions from working as a substance-abuse counselor, regardless of individual circumstances. This severe restriction does nothing to protect the public. It just deprives struggling people of qualified and passionate counselors. Rudy thus seeks a judgment declaring Virginia's ban unconstitutional, enjoining its application, and allowing him the chance to resume work as a substance-abuse counselor.

## JURISDICTION AND VENUE

4.  This is a civil-rights action brought under the Fourteenth Amendment to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff seeks declaratory and injunctive relief against the enforcement of Virginia's ban on people with convictions for any of nearly 200 crimes from working as substance-abuse counselors, Va. Code Ann. § 37.2-416, and the policies and practices of the Virginia Department of Behavioral Health and Developmental Services in enforcing that unconstitutional ban.

5.  This court has jurisdiction under 28 U.S.C. §§ 1331 (federal-question jurisdiction) and 1343(a)(3) (civil-rights jurisdiction).

6.  Venue is proper under 28 U.S.C. § 1391(b)(2) and L.R. 3(C). As described below, Plaintiff and Defendant both reside in this district, and the events giving rise to Plaintiff's claim occurred in this district and this division.

## PARTIES

7.  Plaintiff, Rudolph Henry Carey III, lives in Stafford County, Virginia.

8.  Rudy works as a commercial truck driver, but he wants to work as a substance-abuse counselor.

9.  Defendant Alison Land is Commissioner of the Virginia Department of Behavioral Health and Developmental Services.

10. She is responsible for enforcing Virginia's ban. Va. Code Ann. §§ 37.2-416, -417.

11. Ms. Land is sued in only her official capacity.

## STATEMENT OF FACTS

**A.   Rudy's history with addiction**

12.   Rudy Carey is 51 years old. He works long weeks as a commercial truck driver and otherwise lives a quiet life with his wife in Stafford County, just north of Fredericksburg.

13.   But Rudy's life was more challenging when he was younger.

14.   Rudy was raised by a single father. In June 1988, just after Rudy turned 18, his father was in a car accident, and Rudy had to make the difficult decision to remove his father from life support.

15.   Largely because of that gut-wrenching experience, Rudy developed an addiction to drugs and alcohol.

16.   In the 1990s, Rudy was abusing alcohol and drugs as well as stealing to fund his substance abuse.

17.   Rudy was convicted of theft and driving on a suspended license several times, and he spent about three years in prison for those offenses.

18.   On August 13, 2004, Rudy was driving to meet his drug dealer. On the way, he was pulled over for a broken taillight. Rudy was high, and he gave the police officer, and signed his traffic ticket with, a fake name. When the officer tried to arrest him for forging a public record, Rudy, desperate for drugs, tried to run away. In doing so, he struck the officer who was trying to handcuff him.

19.   Because of this incident, in December 2004, Rudy was ultimately convicted of driving on a suspended license, forging a public record, and assault and battery on an official.

20.   As a result, he served another two years and eight months in prison.

21.   After being released from prison in 2007, Rudy realized he had to get clean and change his life.

### B. Rudy turns his life around and commits to helping others

22. In September 2007, Rudy entered inpatient rehabilitation treatment with the Salvation Army in Richmond.

23. The rehabilitation program was mentally and physically difficult, but Rudy completed it.

24. After completing rehab, Rudy thrived.

25. He found steady, honest work—first selling mattresses, then at McDonald's, where he rose through the ranks and became a manager within six months. He also started taking classes at a community college and reconnected with his children.

26. During this time, Rudy also found God. He had taken discipleship classes while in prison, and he began attending church services while at the Salvation Army. To this day, Rudy is a pastor at his church, helping with bible study and various charity projects.

27. Since getting out of prison in 2007, Rudy has not been convicted of any crimes.

28. Since completing rehab, Rudy has not used illegal drugs.

29. After reforming himself, Rudy dedicated himself to helping others going through hard times.

30. Rudy started by working as a case manager at a homeless shelter, helping people on the margins of society obtain long-term housing and jobs.

31. He also began assisting with a church service at a local jail and speaking to teenagers in juvenile detention.

32. And he continued attending twelve-step meetings. Eventually, he was asked to speak at local drug court events and at twelve-step events all over the country.

33. Those experiences inspired Rudy to work in substance-abuse counseling as a career.

34. Rudy completed more than 200 hours of college coursework in substance-abuse counseling, and he later earned a separate bachelor's degree. 18 Va. Admin. Code § 115-30-50.

35. He began working as a supervised counselor at a substance-abuse treatment facility in October 2013.

36. Neither Rudy nor his employer correctly understood the scope of the ban, and both believed he could legally work as a counselor despite his criminal record.

37. Rudy then completed 2,000 hours of supervised substance-abuse counseling. 18 Va. Admin. Code § 115-30-60(B)(1).

38. For nearly five years, Rudy shined. He had caseloads as high as 60 clients. He even won a counselor of the year award. His supervisor at the time still praises him today.

**C.     The ban ends Rudy's career as a counselor**

39. Even so, the ban still forced Rudy out of his career.

40. In 2018, another rehabilitation facility bought out Rudy's employer. The new ownership reviewed its legal obligations under the ban.

41. The new ownership contacted the Department, and the Department confirmed by letter that the ban made Rudy ineligible to work in any "direct-care" position at any licensed treatment facility in Virginia.

42. The Department's ineligibility letter was based solely on Rudy's then-fourteen-year-old conviction for striking a police officer.

43. Because of the Department's ineligibility letter, Rudy's employer reluctantly let him go in 2018.

44. Today, Rudy supports his family by working as a long-haul trucker. Usually, he has to spend five days a week away from home.

45. Rudy misses substance-abuse counseling, and he would restart his counseling career if he could.

46. But because of a crime he committed while suffering from addiction 17 years ago, Rudy is banned from working as a substance-abuse counselor for the rest of his life.

**D.     The ban**

47. Rudy is not the only Virginian affected by the ban.

48. The Department licenses facilities that provide "[p]lanned individualized interventions intended to reduce or ameliorate … substance abuse through care, treatment, training, habilitation, or other supports." Va. Code Ann. §§ 37.2-403, 37.2-405.

49. Some jobs at these facilities are "direct care positions." A "direct care position" is one "that includes responsibility for … treatment, case management, health, safety, development, or well-being of an individual receiving services." Va. Code Ann. § 37.2-416(A).

50. Substance-abuse counseling is a direct-care position.

51. No one may work in a "direct care position" for a licensed substance-abuse treatment facility without undergoing a criminal background check. Va. Code Ann. § 37.2-416(B).

52. When a licensed treatment facility wants to hire a substance-abuse counselor for a direct-care position, the employer and prospective employee submit paperwork to the Department's Background Investigations Unit.

53. The Department's Background Investigations Unit then sends the employer a letter stating whether the prospective employee is eligible for a direct-care position.

54. With limited exceptions, if the prospective employee has ever been convicted of any of the 176 "barrier crimes," the prospective employee is ineligible to work in a direct-care position. Va. Code Ann. § 37.2-416(B)(1), (4), (K) (referencing Va. Code Ann. § 19.2-392.02).

55. The 176 barrier crimes range widely, including both felonies and misdemeanors. Robbery, recklessly driving a boat, prostitution, pointing a laser at a law enforcement officer, and hazing are all barrier crimes. Va. Code Ann. § 19.2-392.02.

56. Rudy's conviction, assault and battery on an official, is a barrier crime. *Id.* (listing Va. Code Ann. § 18.2-57).

57. There are only limited exceptions to the general rule that conviction of a barrier crime leads to a lifetime ban.

58. For example, some felony drug possession convictions are barriers for only five years. Va. Code Ann. §§ 37.2-416(B)(1), (4) and 19.2-392.02(A).

59. A few other offenses are eligible for an individualized "screening assessment." If a person has committed a screening-eligible offense, the person may work in a direct-care position if screening shows that the offense was substantially related to substance abuse or mental illness and that the person is rehabilitated and does not pose a risk to individuals receiving services. Va. Code Ann. § 37.2-416(C)-(E).

60. Rudy's crime, assault and battery on an official, has a minuscule exception. If the person has only one such conviction, more than ten years have elapsed, *and* the person has been pardoned, the person is eligible for screening.

61. If the screening then shows that the offense was substantially related to substance abuse and the person is rehabilitated and does not pose a risk to individuals receiving services, the person may work in a direct-care position at a substance-abuse treatment facility.

62. But Rudy has not been pardoned.

63. Since 2018, the ban has blocked about 1,100 people from positions supervised by the Department.

### E. As applied to substance-abuse counselors, the barrier-crime ban is irrational

64. Substance abuse is a rampant problem in Virginia and across the country.

65. Because "[t]he increasing trend of drug addiction in Virginia is contributing to multiple adverse public health effects," the Virginia Department of Health declared opioid addiction a public health emergency in 2016.

66. Yet, on information and belief, there is no evidence that the barrier-crime ban protects the public from bad substance-abuse counselors.

67. On information and belief, the barrier-crime ban does not protect the public from bad substance-abuse counselors.

68. On information and belief, the ban *worsens* substance abuse in Virginia by limiting the supply of qualified counselors.

69. On information and belief, the ban *worsens* recidivism because maintaining employment is one of the best ways to prevent re-offending.

70. Virginia's barrier-crime ban bars people from working as substance-abuse counselors if they have been convicted of any of the 176 listed barrier crimes, but most of these 176 crimes have nothing to do with substance-abuse counseling.

71. Substance-abuse counseling does not provide unique opportunities to commit crimes.

72. Substance-abuse counseling does not provide unique opportunities to commit assault and battery.

73. People with assault and battery convictions are not more likely to commit assault and battery as substance-abuse counselors.

74. On information and belief, Virginia does not categorically prevent people with barrier convictions from working in jobs that do present unique opportunities to commit crimes.

75. Indeed, Virginia does not impose the barrier-crime ban on counselors that are counseling on topics other than substance abuse outside of licensed treatment facilities.

76. On information and belief, substance-abuse counseling does not provide more opportunities to commit crime than other kinds of counseling.

77. On information and belief, there is no distinction between substance-abuse counseling and other kinds of counseling that would make it rational to have the barrier-crime ban for only one of them.

78. If the state believed a person's barrier conviction were relevant to substance-abuse counseling, it has separate authority to deny that person certification.

79. On information and belief, Virginia has certified that people are qualified to perform substance-abuse counseling services, only for the Department to ban those same people because they have barrier convictions.

80. The barrier-crime ban serves no legitimate purpose given the availability of individualized screening.

81. To the extent that any of the 176 barrier crimes relate to substance-abuse counseling, the barrier-crime statute irrationally makes the crimes *most* related to substance-abuse counseling, like drug offenses, eligible for individualized screening.

82. With limited exceptions, the barrier-crime ban does not consider a person's current ability to provide substance-abuse counseling.

83. With limited exceptions, the barrier-crime ban does not allow for consideration of the nature and severity of the crime, the nature and circumstances of a person's involvement in the crime, the time elapsed since the conviction, and the degree of the person's rehabilitation.

84. Many people with barrier convictions have been rehabilitated and would present no unique risk to the public if allowed to work as substance-abuse counselors.

85. With limited exceptions, the barrier-crime ban ignores that recidivism decreases as time elapses after a conviction.

86. In general, it takes only a few years after the end of a criminal sentence for the chance that someone will reoffend to decrease to the risk level that some people *without* criminal convictions have of offending for the first time.

87. The barrier-crime ban ignores the modern reality that a person's specific criminal convictions can vary wildly based on plea bargaining, the quality of counsel, and other fortuities of the criminal-justice system.

88. On information and belief, states without barrier-crime bans for substance-abuse counselors do not have more counselor misconduct.

89. People who have overcome substance addiction can be uniquely qualified to help others beat addiction because of their first-hand experience.

90. But people who have overcome substance addiction often have old convictions for barrier crimes from when they were still suffering from addiction themselves.

91. The ban thus excludes many people who are well-suited to work as substance-abuse counselors.

92. The barrier-crime ban does not prevent anyone from providing substance-abuse counseling as a volunteer.

93. People with barrier convictions can and do volunteer as substance-abuse counselors.

94. The Department even admits that the barrier-crime ban blocks qualified people from working as substance-abuse counselors.

95. In a public presentation, the Department has explained that one of its "challenges" is finding "qualified applicants to help meet the growing behavioral health/developmental services workforce needs."

96. In that same presentation, the Department explained that many who are excluded by Virginia's barrier-crime statute are "qualified applicants who can provide valuable services," partly because many such applicants have "first-hand experience" overcoming substance use themselves, "which can be invaluable in the provision of services."

97. The Department also explained in that public presentation that research shows that "recidivism rates decline by year after arrest."

98. The barrier-crime ban for substance-abuse counselors is not rationally related to the duties of substance-abuse counselors.

99. The barrier-crime ban for substance-abuse counselors is not rationally related to any legitimate government interest.

100. Rudy has successfully worked as a substance-abuse counselor.

101. Rudy remains fully qualified to work as a substance-abuse counselor.

102. Rudy's criminal record in no way diminishes his ability to work as a substance-abuse counselor.

103. Allowing Rudy to work as a substance-abuse counselor would not pose any risk to the public.

104. Allowing Rudy to work as a substance-abuse counselor would benefit the public.

105. Banning Rudy from working as a substance-abuse counselor is not rationally related to the duties of substance-abuse counselors.

106. Banning Rudy from working as a substance-abuse counselor is not rationally related to any legitimate government interest.

## INJURY TO PLAINTIFF

107. Because of the barrier-crime ban, Rudy is barred from working as a substance-abuse counselor for the rest of his life.

108. Because of the barrier-crime ban, Rudy is working as a truck driver rather than a substance-abuse counselor.

109. Because of the barrier-crime ban, Rudy cannot work in a job in which he can apply his first-hand experience in overcoming addiction to help others overcome addiction.

110. Because of the barrier-crime ban, Rudy cannot apply the skills and expertise he gained from his substance-abuse counselor training to his career.

111. Because of the barrier-crime ban, Rudy continues to be stigmatized long after he paid his debt to society for his offenses.

112. To be clear, Rudy is not challenging the ineligibility letter the Department sent in 2018. He is not challenging anything that has happened to him in the past or seeking any damages. He is seeking relief prospectively to remove the burden the barrier-crime ban imposes on him today.

113. Today, it is futile for Rudy to apply for jobs as a substance-abuse counselor.

114. But for the barrier-crime ban, Rudy would apply to work at substance-abuse treatment facilities as a substance-abuse counselor.

115. But for the barrier-crime ban, Rudy would have a fair, nondiscriminatory chance at being hired to work as a substance-abuse counselor.

116. Indeed, Rudy's former supervisor at a substance-abuse treatment facility has said that she would "hire him again in a heartbeat."

117. But for the barrier-crime ban, Rudy would be hired as, and work as, a substance-abuse counselor.

## CLAIMS FOR RELIEF

### First Claim for Relief—Equal Protection

118. Plaintiff incorporates paragraphs 1 through 117.

119. Under the Fourteenth Amendment to the U.S. Constitution, no state may "deny to any person within its jurisdiction the equal protection of the laws."

120. Equal protection of the laws means that the government cannot irrationally subject similarly situated people to different rules.

121. Aspiring substance-abuse counselors with barrier convictions are similarly situated, in all relevant respects, to other aspiring substance-abuse counselors without barrier convictions.

122. Aspiring substance-abuse counselors with convictions under Va. Code Ann. § 18.2-57 (which criminalizes assault and battery) are similarly situated, in all relevant respects, to other aspiring substance-abuse counselors without convictions under Va. Code Ann. § 18.2-57.

123. Rudy is similarly situated, in all relevant respects, to other qualified aspiring substance-abuse counselors who do not have barrier convictions.

124. Aspiring substance-abuse counselors are similarly situated to other kinds of counselors who are not subject to the barrier-crime ban.

125. The barrier-crime ban irrationally distinguishes between aspiring substance-abuse counselors with and without barrier convictions.

126. The barrier-crime ban irrationally distinguishes between aspiring substance-abuse counselors with barrier convictions and aspiring substance-abuse counselors with equally serious convictions that happen to not be barrier convictions.

127. The barrier-crime ban irrationally distinguishes between aspiring substance-abuse counselors and other kinds of aspiring counselors.

128. The barrier-crime ban irrationally distinguishes between aspiring substance-abuse counselors with and without convictions under Va. Code Ann. § 18.2-57.

129. The barrier-crime ban irrationally distinguishes between Rudy and aspiring substance-abuse counselors without barrier convictions.

130. Because the barrier-crime statute irrationally discriminates between similarly situated groups of people, it violates the Equal Protection Clause.

131. Unless Defendant is enjoined from enforcing Va. Code Ann. § 37.2-416, Rudy will suffer continuing and irreparable harm.

**Second Claim for Relief—Due Process**

132. Plaintiff incorporates paragraphs 1 through 117.

133. By irrationally banning qualified people from working as substance-abuse counselors, Defendant violates the Fourteenth Amendment right to due process of law.

134. Due process of law has both substantive and procedural components.

135. The substantive component of the Fourteenth Amendment's Due Process Clause includes the right to choose one's field of private employment and the right to earn an honest living.

136. Due process requires that regulations on entry into a profession be rationally related not merely to any legitimate state interest but specifically to the applicant's fitness or capacity to practice the profession itself.

137. Barring people convicted of any of 176 crimes from working as substance-abuse counselors—with only limited exceptions allowing for individualized screening—violates due process of law.

138. Barring people convicted under Va. Code Ann. § 18.2-57 from working as substance-abuse counselors—with only limited exceptions allowing for individualized screening—violates due process of law.

139. Barring Rudy from working as a substance-abuse counselor violates due process of law.

140. Irrebuttably presuming that people with barrier convictions are unfit to work as substance-abuse counselors denies due process of law.

141. Barring people with barrier convictions from working as substance-abuse counselors presents an unacceptably high risk of erroneously depriving them of the right to work in their chosen profession and thus denies due process of law.

142. Barring people with convictions under Va. Code Ann. § 18.2-57 from working as substance-abuse counselors—with only limited exceptions allowing for individualized screening—presents an unacceptably high risk of erroneously depriving them of the right to work in their chosen profession and thus denies due process of law.

143. Barring Rudy from working as a substance-abuse counselor presents an unacceptably high risk of erroneously depriving him of his right to work in his chosen profession and thus denies due process of law.

144. Unless Defendant is enjoined from enforcing Va. Code Ann. § 37.2-416, Rudy will suffer continuing and irreparable harm.

### Third Claim for Relief—Privileges or Immunities

145. Plaintiff incorporates paragraphs 1 through 117.

146. The Fourteenth Amendment's Privileges or Immunities Clause was meant to protect the right to earn a living free from irrational government restrictions.

147. By barring people with barrier convictions from becoming substance-abuse counselors, Defendant violates the Privileges or Immunities Clause.

148. By barring people with convictions under Va. Code Ann. § 18.2-57 from working as substance-abuse counselors—with only limited exceptions allowing for individualized screening—Defendant violates the Privileges or Immunities Clause.

149. By barring Rudy from working as a substance-abuse counselor, Defendant violates the Privileges or Immunities Clause.

150. Plaintiff recognizes that this claim is foreclosed by the *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1873). He preserves it here given the "overwhelming consensus among leading constitutional scholars" that *Slaughter-House* was "egregiously wrong." *McDonald v. Chicago*, 561 U.S. 742, 756-57 (2010) (noting argument made in brief of Constitutional Law Professors as Amici Curiae, Docket No. 08-1521, 561 U.S. 742 (filed July 9, 2009)).

**REQUEST FOR RELIEF**

Rudy respectfully requests:

A. A judgment declaring that Va. Code Ann. § 37.2-416(B)(1), (4), (K) is unconstitutional as-applied to all people seeking to work as substance-abuse counselors, all people seeking to work as substance-abuse counselors with convictions under Va. Code Ann. § 18.2-57, and as-applied to him;

B. A permanent injunction preventing Defendant from enforcing Va. Code Ann. § 37.2-416(B)(1), (4), (K) as to all people seeking to work as substance-abuse counselors, as to all people seeking to work as substance-abuse counselors with convictions under Va. Code Ann. § 18.2-57, and as to him;

C. An award of attorneys' fees, costs, and expenses under 42 U.S.C. § 1988; and

D. Any further legal and equitable relief that the Court deems just and proper.

DATED this 28th day of September, 2021.

Respectfully submitted,

/s/ Paul Sherman

Paul Sherman (psherman@ij.org; VA Bar No. 73410)
Andrew Ward* (award@ij.org; NY Bar No. 5364393)
Michael Greenberg* (mgreenberg@ij.org; DC Bar No. 1723725)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321

*Attorneys for Plaintiff*

*Applications for admission *pro hac vice* to be filed