**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| RUDOLPH CAREY III, | |
| Plaintiff, | |
| v. | Civil Case No. 1:21-cv-1090 |
| ALISON LAND, in her official capacity as Commissioner of the Virginia Department of Behavioral Health and Developmental Services, | |
| Defendant. | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................ 5

I.   Rudy need not exhaust the pardon process to sue in federal court. .................................... 5

II.  Rudy has stated a claim that the barrier law is unconstitutional for substance-
     abuse counselors. ............................................................................................... 9

     A.  Motions to dismiss favor plaintiffs, and courts routinely strike down
         these laws. ................................................................................................. 9

     B.  The allegations of the complaint state a claim. ............................................... 13

     C.  The barrier law is plausibly irrational for many further reasons. ........................ 15

         i.   The ban is overbroad. ........................................................................... 15

         ii.  The ban ignores individual circumstances. ............................................... 17

         iii. The ban is uncommonly harsh. ............................................................... 18

         iv.  The ban is riddled with exceptions. ........................................................ 20

     D.  There are no technical defects in the equal-protection claim. ............................ 23

III. The barrier law is irrational as applied to Rudy. ................................................... 25

CONCLUSION ....................................................................................................... 27

# TABLE OF AUTHORITIES

## CASES

*Barletta v. Rilling*,
  973 F. Supp. 2d 132 (D. Conn. 2013) ............................................................ *passim*

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................9

*Billups v. City of Charleston*,
  961 F.3d 673 (4th Cir. 2020) ..............................................................................8

*Brewer v. Department of Motor Vehicles*,
  93 Cal. App. 3d 358 (1979) ...............................................................................11

*Butts v. Nichols*,
  381 F. Supp. 573 (S.D. Iowa 1974) .......................................................11, 19, 24

*Chunn v. State ex rel. Mississippi Department of Insurance*,
  156 So. 3d 884 (Miss. 2015)...........................................................10, 16, 24, 25

*City of Cleburne v. Cleburne Living Center*,
  473 U.S. 432 (1985)........................................................................................9, 10

*Craigmiles v. Giles*,
  312 F.3d 220 (6th Cir. 2002) ............................................................................10

*Cronin v. O'Leary*,
  2001 WL 919969 (Mass. Super. Ct. Aug. 9, 2001) ...........................................11

*Davis v. Bucher*,
  451 F. Supp. 791 (E.D. Pa. 1978) .....................................................................12

*Doe v. Virginia Department of State Police*,
  713 F.3d 745 (4th Cir. 2013) .........................................................................7, 8

*Enigwe v. U.S. Airways/U.S. Airways Express*,
  438 F. App'x 80 (3d Cir. 2011) .........................................................................13

*Fields v. Department of Early Learning*,
  434 P.3d 999 (Wash. 2019)................................................................... *passim*

*Furst v. New York City Transit Authority*,
  631 F. Supp. 1331 (E.D.N.Y. 1986) ............................................................11, 24

*Geo-Tech Reclamation Industries, Inc. v. Hamrick*,
　　886 F.2d 662 (4th Cir. 1989) .................................................................10

*Graham v. Florida*,
　　560 U.S. 48 (2010)..................................................................................18

*Graham v. Long Island Railroad*,
　　230 F.3d 34 (2d Cir. 2000)......................................................................24

*Green v. City of Tucson*,
　　255 F.3d 1086 (9th Cir. 2001) ..................................................................7

*Greenspring Racquet Club, Inc. v. Baltimore County*,
　　232 F.3d 887 (4th Cir. 2000) ..................................................................23

*Gregg v. Lawson*,
　　732 F. Supp. 849 (E.D. Tenn. 1989) ................................................11, 24

*Grimm v. Gloucester County School Board*,
　　972 F.3d 586 (4th Cir. 2020) ..................................................................24

*Gurrola v. Duncan*,
　　519 F. Supp. 3d 732 (E.D. Cal. 2021)....................................................12

*Johnson v. Allegheny Intermediate Unit*,
　　59 A.3d 10 (Pa. Commw. Ct. 2012) ...........................................12, 25, 26

*Kindem v. City of Alameda*,
　　502 F. Supp. 1108 (N.D. Cal. 1980) ..................................................11, 24

*King v. State Board of Barber Examiners*,
　　195 A.3d 315 (Pa. Commw. Ct. 2018) ...................................................13

*Knick v. Township of Scott*,
　　139 S. Ct. 2162 (2019).........................................................................6, 7

*Lazy Y Ranch Ltd. v. Behrens*,
　　546 F.3d 580 (9th Cir. 2008) ..................................................................10

*Lewis v. Alabama Department of Public Safety*,
　　831 F. Supp. 824 (M.D. Ala. 1993) .........................................................11

*Miller v. Alabama*,
　　567 U.S. 460 (2012)................................................................................18

*Miller v. Carter*,
  547 F.2d 1314 (7th Cir. 1977) ................................................................10, 21, 25

*Morrison v. Garraghty*,
  239 F.3d 648 (4th Cir. 2001) ...........................................................................23

*Nixon v. Commonwealth*,
  839 A.2d 277 (Pa. 2003) ...........................................................................11, 21, 25

*Osterman v. Paulk*,
  387 F. Supp. 669 (S.D. Fla. 1974) ....................................................................12

*Patsy v. Board of Regents*,
  457 U.S. 496 (1982)..........................................................................................6, 7

*Pakdel v. City and County of San Francisco*,
  141 S. Ct. 2226 (2021).................................................................................6, 7, 8

*Pashby v. Delia*,
  709 F.3d 307 (4th Cir. 2013) ..............................................................................8

*Peake v. Commonwealth*,
  132 A.3d 506 (Pa. Commw. Ct. 2015) ....................................................11, 21, 25

*Pentco, Inc. v. Moody*,
  474 F. Supp. 1001 (S.D. Ohio 1978) .................................................................11

*Perrine v. Municipal Court*,
  5 Cal. 3d 656 (1971) ........................................................................................11

*Saint Joseph Abbey v. Castille*,
  712 F.3d 215 (5th Cir. 2013) ............................................................................10

*Schware v. Board of Bar Examiners*,
  353 U.S. 232 (1957)......................................................................................9, 16

*Secretary of Revenue v. John's Vending Corp.*,
  309 A.2d 358 (Pa. 1973)............................................................................12, 17, 26

*Shimose v. Hawai'i Health Systems Corp.*,
  345 P.3d 145 (Haw. 2015) ................................................................................12

*Smith v. Fussenich*,
  440 F. Supp. 1077 (D. Conn. 1977)............................................................... *passim*

*Tanner v. De Sapio,*
    150 N.Y.S.2d 640 (N.Y. Sup. Ct. 1956) ...................................................................11

*Thompson v. Gallagher,*
    489 F.2d 443 (5th Cir. 1973) ...................................................................................12

*Warren County Human Services v. State Civil Service Commission,*
    844 A.2d 70 (Pa. Commw. Ct. 2004) ................................................................12, 25

*Weinberger v. Wiesenfeld,*
    420 U.S. 636 (1975).................................................................................................23

*Willis v. Town of Marshall,*
    426 F.3d 251 (4th Cir. 2005) ...................................................................................24

*Wright v. North Carolina,*
    787 F.3d 256 (4th Cir. 2015) .....................................................................................9

**FEDERAL RULES**

Fed. R. Civ. P. 12......................................................................................................5, 9

**STATUTES**

42 U.S.C. § 1983........................................................................................................6, 7

Va. Code Ann. § 18.2-46.2 ...........................................................................................16

Va. Code Ann. § 18.2-51.3 ...........................................................................................22

Va. Code Ann. § 18.2-51.5 ...........................................................................................22

Va. Code Ann. § 18.2-55.1 ...........................................................................................22

Va. Code Ann. § 18.2-56 ...............................................................................................22

Va. Code Ann. § 18.2-57.01 .........................................................................................16

Va. Code Ann. § 18.2-60 ...............................................................................................22

Va. Code Ann. § 18.2-60.1 ......................................................................................16, 22

Va. Code Ann. § 18.2-83 ...............................................................................................16

Va. Code Ann. § 18.2-88 ...............................................................................................16

Va. Code Ann. § 18.2-250 .............................................................................................22

Va. Code Ann. § 18.2-282 ........................................................................................16, 22

Va. Code Ann. § 18.2-374.1:1 ..........................................................................................22

Va. Code Ann. § 18.2-477.1 ..............................................................................................16

Va. Code Ann. § 19.2-392.02 ........................................................................................3, 22

Va. Code Ann. § 37.1-183.3 ..............................................................................................21

Va. Code Ann. § 37.2-416 ..........................................................................................*passim*

Va. Code Ann. § 54.1-204 ................................................................................................18

Va. Code Ann. § 54.1-2930 ..............................................................................................19

## REGULATIONS

18 Va. Admin. Code 35-10-30..........................................................................................19

18 Va. Admin. Code 115-20-140......................................................................................20

18 Va. Admin. Code 115-50-120......................................................................................20

18 Va. Admin. Code 125-20-160......................................................................................20

## OTHER AUTHORITIES

1999 Virginia Laws Ch. 685 (HB 2572).........................................................................21

## INTRODUCTION

This is a Fourteenth Amendment challenge to Virginia's barrier law, which limits people with any of 176 convictions from working as substance-abuse counselors. One of the people affected is the plaintiff, Rudy Carey. Rudy won a battle with drug and alcohol addiction more than a decade ago. Then, after achieving sobriety himself, Rudy dedicated himself to helping others overcome addiction. He successfully worked as a substance-abuse counselor for five years. He won a counselor of the year award. But, eventually, his employer took another look at the prohibition. And because Rudy has a barrier crime on his record—he struck a police officer during an arrest in 2004—his employer was forced to fire him. Because of that one conviction from 17 years ago, Rudy is banned from working as a substance-abuse counselor for the rest of his life.

Rudy is not the only person affected by the barrier law. The agency that enforces the law, the Department of Behavioral Health and Developmental Services, admits there is a shortage of counselors. It admits that people who have overcome addiction themselves can be "qualified" to work as substance-abuse counselors. It admits that people who have overcome addiction have "invaluable" experience to share. But because people who have abused substances often have barrier convictions due to their substance abuse, the Department still bars them forever.

The states of course have wide latitude to regulate occupations. But there are limits. And barring rehabilitated applicants for old, irrelevant convictions simply goes too far. As applied to substance-abuse counselors, and especially as applied to substance-abuse counselors like Rudy, Virginia's barrier law is outright irrational. Which means it is unconstitutional.

Still, the Department (through the defendant, Commissioner Alison Land) has moved to dismiss for two reasons. Procedurally, the Department argues that Rudy is not really injured

unless the governor denies him a pardon. Substantively, the Department treats gesturing at health and safety as enough to satisfy the rational-basis test.

The Court should reject these arguments. Rudy—who was fired because of the barrier law and who cannot work because of the barrier law—is injured right now. He need not spend years exhausting a state remedy to sue in federal court. On the merits, the Department's speculation cannot defeat the allegations of a well-pleaded complaint. In more than a dozen cases, plaintiffs challenging these kinds of lifetime bans have won judgment in their favor. For that to happen, plaintiffs must be able to meet the much easier test to proceed past the pleadings. Rudy has done so here, and his claims should go to discovery.

## BACKGROUND

Rudy's story begins in 1988, just after he turned 18, when his father was in a terrible car accident and Rudy made the gut-wrenching choice to take him off life support. Largely because of that experience, Rudy became addicted to drugs and alcohol. In the 1990s, his life involved substance abuse, theft, and several years in prison. Compl. (ECF 1) ¶¶ 12–17.

The low point came in 2004 when Rudy was driving to meet a drug dealer and was pulled over for a broken taillight. Desperate for drugs, Rudy got out of his car and tried to run away. As a police officer was trying to handcuff him, Rudy hit the officer. After the dust settled, Rudy was convicted of assault and battery on a public official (as well as driving on a suspended license and forging a public record, since he'd given a fake name for the traffic ticket). He served another two years and eight months in prison. *Id.* ¶¶ 18–20.

After being released in 2007, Rudy knew he had to change his life. He entered an in-patient rehabilitation center in Richmond. The program was difficult, but he completed it. Today, Rudy has been sober for 14 years. He has not been convicted of any more crimes. *Id.* ¶¶ 21–24, 27–28. And that is just the start of how he has turned his life around.

2

At work, he began by selling mattresses, and then by moving on to a McDonald's, where he became a manager within six months. At home, he reconnected with his children. At school, he started taking college classes. At church, he connected with his faith (and remains a pastor to this day). In his community, he visited drug-court events and juvenile detentions. Across the country, he spoke at twelve-step meetings. Eventually, he became a case manager at a homeless shelter. *Id.* ¶¶ 25–26, 30–32.

All this led to a realization: Rudy wanted a career using his own experience overcoming addiction to help others overcome addiction themselves. So he decided to become a substance-abuse counselor. He took hundreds more hours of college classes and ultimately secured a job at a rehabilitation center in 2013. There, Rudy shined. He had caseloads as high as 60 clients. He completed thousands of hours of counseling. He even won his center's "counselor of the year" award. *Id.* ¶¶ 33–35, 37–38.

But, in 2018, the career Rudy had built for himself came crashing down thanks to the barrier law. Under Virginia law, there are 176 barrier crimes for substance-abuse counselors (and other direct-care positions supervised by the Department). With limited exceptions, the general rule is that conviction for any one of the crimes means a lifetime ban. The list is far-reaching. It includes robbery; it also includes hazing and prostitution and recklessly driving a boat. And it includes assault and battery on a public official. *Id.* ¶¶ 48–56 (discussing the barrier law, Va. Code Ann. § 37.2-416, and the list of barrier crimes, Va. Code Ann. § 19.2-392.02).[1]

---

[1] The statutory list of barrier crimes is hard to read because it only enumerates other code sections. An old Department list naming the barrier crimes can be found at https://dbhds.virginia.gov/assets/document-library/BIU/attachment-2rev072017.pdf. Rudy *does not* suggest that the Court accept this summary or judicially notice it. It is several years out of date and not incorporated into the complaint. But it might make a helpful starting point.

That meant Rudy had to go. Indeed, it was only by sheer luck that he had been able to work in the first place. Back in 2013, Rudy's employer knew about his criminal record and wanted to hire him anyway. Both he and his employer happened to misunderstand the ban, and they thought it was legal for him to work. So he did. It was not until five years later, when a new owner bought the rehab center, that the severity of the barrier became clear. The new ownership took another look at Rudy's record, contacted the Department, and the Department confirmed that the barrier law prohibited Rudy from working as a substance-abuse counselor—just because of his then-fourteen-year-old conviction. So his employer reluctantly let him go. Today, since Rudy cannot work as a substance-abuse counselor, he supports his family by working long weeks as a truck driver. *Id.* ¶¶ 12, 36, 39–44.

The reach of the barrier law extends far beyond Rudy. Since just 2018, the law has blocked about 1,100 people from working in positions regulated by the Department.[2] Drug abuse is rampant in Virginia; indeed, in 2016, the Virginia Department of Health declared opioid addiction a public-health emergency. So there is a growing need for substance-abuse counselors. But because many people with the "invaluable" "first-hand experience" of overcoming addiction themselves—those are the Department's words—have old convictions of their own, the barrier law makes it impossible for them to share their invaluable experience as counselors. The ironic (and irrational) result is that the barrier law worsens substance abuse in Virginia. *Id.* ¶¶ 63–65, 68, 94–96.

Facing a lifetime apart from the career he wants, Rudy sued. He is challenging the barrier law under the Due Process, Equal Protection, and Privileges or Immunities clauses of the

---

[2] This figure includes all positions regulated by the Department, not just substance-abuse counselors.

Fourteenth Amendment. (The Privileges or Immunities claim is foreclosed under current law. Compl. ¶¶ 146–50. Rudy is only preserving it for appellate review, and he concedes the motion to dismiss should be granted as to that part.) Rudy seeks an injunction preventing the Department from enforcing the barrier as applied to him, as applied to would-be substance-abuse counselors with assault and battery convictions, and as applied to all would-be substance-abuse counselors. *Id.* ¶¶ 118–50 and Prayer for Relief. Now the Department has moved to dismiss. It argues lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). Dep't Br. (ECF 14).

## ARGUMENT

As Rudy shows in the next sections, the Department's motion should be denied. In Part I, Rudy explains that the Department's standing-cum-ripeness defense is wrong: Rudy need not spend years hoping that lightning strikes in the pardon process. He can sue in federal court today because he is injured by the barrier law today. In Part II, Rudy shows that the Department is wrong on the merits. More than a dozen cases invalidate these kinds of flat bans, so it is at least plausible that the barrier law could be unconstitutional for substance-abuse counselors here. Finally, in Part III, Rudy shows that the law is plausibly unconstitutional as applied to him. That's what the facts in the complaint establish.

### I.   Rudy need not exhaust the pardon process to sue in federal court.

The Department first argues that Rudy is not *really* banned from working as a substance-abuse counselor because he might one day be pardoned by the governor. Dep't Br. 8–12. This argument turns on a minuscule escape hatch in the barrier law: if a would-be counselor has exactly one conviction for assault and battery on a public official, and more than ten years have elapsed since the conviction, and the would-be counselor has been pardoned by the governor, and a prospective employer agrees to an individualized screening by the Department, and the

screening shows that the conviction related to substance abuse or mental illness, and the screening shows that there has been successful rehabilitation, and the screening shows that there is no risk to people who would receive services, then the barrier lifts and the person may work as a substance-abuse counselor. Compl. ¶¶ 60–61 (discussing Va. Code Ann. § 37.2-416(D)). This option is theoretically open to Rudy because he has not been denied a pardon. So, the Department argues, "[i]t is unclear if plaintiff will always be barred from pursuing a direct care position as a substance abuse counselor." Dep't Br. 10. That means it is unclear if Rudy is injured by the barrier law, and that, in turn, means he lacks standing (or that the case is unripe).

This argument gets standing (and ripeness) exactly backward. Those doctrines constrain suits when an *uninjured* plaintiff faces a hypothetical injury in the future. They do not prevent a *currently injured* plaintiff from suing just because there is a hypothetical possibility of relief years down the line. And that is the situation here. Whatever rare relief Rudy might be able to get after years in a black-box pardon process, the situation today—the situation since the Department forced him out of his job in 2018—is that he is "barred from pursuing a direct care position as a substance abuse counselor." Dep't Br. 10. That is injury enough for standing and ripeness.

That answer is clear when the argument is seen for what it is: a demand that Rudy exhaust state remedies. That demand is baseless because "the settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983." *Knick v. Township of Scott*, 139 S. Ct. 2162, 2167 (2019) (cleaned up). (The rule has been settled since *Patsy v. Board of Regents,* 457 U.S. 496 (1982).) Here the exhaustion argument is dressed in standing clothing, but that does not make it any more proper. The Supreme Court even repeated this rule a few months ago in a dispositive case. In *Pakdel v. City and County of San Francisco*, a plaintiff tried to bring a § 1983 case in federal court, but the Ninth Circuit dismissed because the plaintiff had

not properly sought an exemption from the challenged action in the administrative process. 141 S. Ct. 2226, 2228–30 (2021) (per curiam). In the Ninth Circuit's view, the possibility of an administrative exemption meant that the case was unripe. But the Supreme Court summarily reversed in a unanimous, per curiam opinion because a rule "that a plaintiff seek 'an exemption through the prescribed [state] procedures'" is "plainly" an exhaustion requirement. *Id.* at 2230. And that requirement does not exist. *See also Knick*, 139 S. Ct. at 2173 ("[An overruled case] effectively established an exhaustion requirement for § 1983 takings claims …. But the Court did not phrase its holding in those terms; if it had, its error would have been clear."); *Green v. City of Tucson*, 255 F.3d 1086, 1102 (9th Cir. 2001) (en banc) (explaining that the rule against requiring exhaustion "necessarily" disapproved a form of *Younger* abstention equivalent to requiring exhaustion).

Indeed, the one case the Department discusses as factually analogous, *Doe v. Virginia Department of State Police*, confirms that Rudy has standing. 713 F.3d 745 (4th Cir. 2013). In *Doe*, a sex offender could not go onto school or Sunday school grounds without permission from the school board (or church) and a Virginia circuit court. She challenged that restriction without seeking permission from either. The Fourth Circuit dismissed for lack of standing and ripeness because it was "far from clear whether she [would] ultimately be barred." *Id.* at 754. There was simply "no way of knowing whether [Doe would] ultimately be unable to enter her children's school." *Id.* at 756. Or, as Judge Keenan put it in her concurrence, there was no "final, reviewable decision" from the Virginia circuit courts and school boards, who were "the initial decisionmakers" under Virginia law. *Id.* at 762–63 (Keenan, J., concurring).

That is nothing like the situation here. For one, *Doe* predates *Pakdel* and, even at the time, the *Doe* plaintiff did not rely on *Patsy*, *see id.* at 762 (Keenan, J., concurring). More

important, it is crystal "clear" that Rudy is barred by a "final" decision from the decisionmaker: the barrier law itself says he cannot work, the Department booted him from his job in 2018, and the Department bars him from working today. *See Pashby v. Delia*, 709 F.3d 307, 317 (4th Cir. 2013) (finding challenge to government policy ripe, even though plaintiffs could administratively appeal, because policy was "formalized" and had "concrete effects"). That is a conclusive, indeed lifelong, decision by the entity that decides these things: the Department itself. The governor, by contrast, is not the initial decisionmaker in this process because he is not a decisionmaker at all: he decides nothing about who can work as a substance-abuse counselor. Rather, the governor has an unrelated power to bestow executive mercy generally—if and when he sees fit. The barrier law reflects that mercy, but it does not charge the governor with initially deciding who may work as a counselor the way the law in *Doe* charged courts and school boards with deciding which sex offenders could access schools. So if it is relevant at all, *Doe* confirms that this case is justiciable.

The bottom line is this: Rudy is injured today because the Department is barring him from working today, just as it will bar him tomorrow, and just as it will keep barring him until he dies. That is a concrete, real-world harm under *Pakdel*, and it is enough for standing and ripeness.[3]

---

[3] The Department also briefly asserts that Rudy "lacks standing to bring as-applied claims on behalf" of others affected by the barrier law. Dep't Br. 10. This assertion is irrelevant because Rudy is not bringing class or other kinds of representative claims on behalf of third parties. As plaintiffs routinely do, Rudy is seeking as-applied and quasi-facial *relief. See, e.g.*, *Billups v. City of Charleston*, 961 F.3d 673 (4th Cir. 2020) (facially invalidating ordinance in challenge brought by individual plaintiffs). The Department does not seem to contest this routine practice.

## II. Rudy has stated a claim that the barrier law is unconstitutional for substance-abuse counselors.

In the next section, Rudy discusses his claim that the barrier law is unconstitutional as applied to substance-abuse counselors. Part A states the relevant law. Part B details the allegations of the complaint and shows that Rudy has stated a claim. Part C lists further reasons why the barrier law is plausibly irrational. Part D refutes the Department's idea that there are technical flaws dooming the case.

### A. *Motions to dismiss favor plaintiffs, and courts routinely strike down these laws.*

The pleading standard is the usual one, and it not demanding. Under Rule 8, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court thus reviews a Rule 12 motion to dismiss while "accepting as true all of the factual allegations contained in the complaint and drawing all reasonable inferences in favor of the plaintiff." *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (cleaned up). "Further, while the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (cleaned up). Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation omitted).

Substantively, the Department invokes the rational-basis test. Dep't Br. 16–19. Usually that means that the challenged law must be "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). But, as the Department acknowledges, when dealing with an employment restriction the standard is tighter: the qualification must have a rational connection with the individual's fitness to practice the profession. Dep't Br. 23 (citing *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 239 (1957)). This

standard is "deferential," but it is not "toothless." *Craigmiles v. Giles*, 312 F.3d 220, 229 (6th Cir. 2002). Plaintiffs can "negate a seemingly plausible basis for [a] law by adducing evidence of irrationality." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013); *accord Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 590–91 (9th Cir. 2008) ("plaintiffs [may] rebut the facts underlying defendants' asserted rationale for a classification, to show that the challenged classification could not reasonably be viewed to further the asserted purpose"). Indeed, plaintiffs win rational-basis claims. *See, e.g.*, *Cleburne*, 473 U.S. at 447–50; *Geo-Tech Reclamation Indus., Inc. v. Hamrick*, 886 F.2d 662, 667 (4th Cir. 1989); *St. Joseph Abbey*, 712 F.3d at 223–27; *Craigmiles*, 312 F.3d at 225–29. So courts should hesitate to dismiss rational-basis claims before discovery allows plaintiffs a chance to prove them.

That caution is especially appropriate here because the Court is not writing on a blank slate. Over and over, rational-basis claims have won in cases that challenge flat restrictions on employment for people with criminal records. State high courts, federal district courts, and even the Seventh Circuit in a directly on-point case have all struck down criminal-history-based bans *on the merits*—including in education, childcare, private security, and other potentially sensitive fields. That has included bans on:

- Taxi driving, *Miller v. Carter*, 547 F.2d 1314 (7th Cir. 1977) (per curiam), *aff'd*, 434 U.S. 356 (1978) (armed robbery and other crimes);

- Providing childcare, *Fields v. Dep't of Early Learning*, 434 P.3d 999 (Wash. 2019) (attempted robbery);

- Bail-bond work, *Chunn v. State ex rel. Miss. Dep't of Ins.*, 156 So. 3d 884 (Miss. 2015) (any felony);

- Trading precious metals, *Barletta v. Rilling*, 973 F. Supp. 2d 132 (D. Conn. 2013) (any felony);

- Civil-service employment, *Furst v. N.Y.C. Transit Auth.*, 631 F. Supp. 1331 (E.D.N.Y. 1986) (any felony); *Kindem v. City of Alameda*, 502 F. Supp. 1108 (N.D. Cal. 1980) (any felony); *Butts v. Nichols*, 381 F. Supp. 573 (S.D. Iowa 1974) (any felony);

- Being a private detective or security guard, *Smith v. Fussenich*, 440 F. Supp. 1077 (D. Conn. 1977) (any felony);

- Public wrecker contracting, *Gregg v. Lawson*, 732 F. Supp. 849 (E.D. Tenn. 1989) (any felony) (denying motion to dismiss); *Lewis v. Ala. Dep't of Pub. Safety*, 831 F. Supp. 824 (M.D. Ala. 1993) (misdemeanors of moral turpitude);

- Health and human services jobs with unsupervised client contact, *Cronin v. O'Leary*, 2001 WL 919969 (Mass. Super. Ct. Aug. 9, 2001) (manslaughter and armed robbery);

- Massage, *Pentco, Inc. v. Moody*, 474 F. Supp. 1001 (S.D. Ohio 1978) (any two felonies within five years or any sex crime within five years);

- Cosmetology, *Tanner v. De Sapio*, 150 N.Y.S.2d 640 (N.Y. Sup. Ct. 1956) (grand larceny);

- Selling cars, *Brewer v. Dep't of Motor Vehicles*, 93 Cal. App. 3d 358 (1979) (crimes of moral turpitude);

- Running a bookstore, *Perrine v. Mun. Ct.*, 5 Cal. 3d 656 (1971) (certain sexual and violent crimes);

- Providing eldercare, *Nixon v. Commonwealth*, 839 A.2d 277 (Pa. 2003) (various crimes); *Peake v. Commonwealth*, 132 A.3d 506 (Pa. Commw. Ct. 2015) (en banc) (same);

- Working in a public school, *Johnson v. Allegheny Intermediate Unit*, 59 A.3d 10 (Pa. Commw. Ct. 2012) (en banc) (felony homicide);

- Providing child-protective services, *Warren Cnty. Hum. Servs. v. State Civ. Serv. Comm'n,* 844 A.2d 70 (Pa. Commw. Ct. 2004) (aggravated assault);

- Working as a radiology technician, *Shimose v. Haw. Health Sys. Corp.*, 345 P.3d 145 (Haw. 2015) (drug possession with intent) (statutory ruling denying motion for summary judgment); and

- Operating a cigarette wholesaler, *Sec'y of Revenue v. John's Vending Corp.*, 309 A.2d 358 (Pa. 1973) (crimes of moral turpitude) (statutory ruling).

Courts likewise strike down bans based on disfavored noncriminal backgrounds. *See, e.g.*, *Thompson v. Gallagher*, 489 F.2d 443 (5th Cir. 1973) (ban on public employment for less-than-honorably discharged veterans); *Osterman v. Paulk*, 387 F. Supp. 669 (S.D. Fla. 1974) (ban on public employment for recent marijuana users); *Davis v. Bucher*, 451 F. Supp. 791 (E.D. Pa. 1978) (ban on public employment for former drug users). In nearly all these cases, the plaintiffs outright won. And if plaintiffs can win cases like this one, it necessarily means they can survive motions to dismiss, which ask the much easier question whether their claims are plausible.[4]

To be sure, the cases are not unanimous. *See* Dep't Br. 19 n.7, 23 (citing two cases upholding employment restrictions based on criminal history). In *Gurrola v. Duncan*—which is on appeal to the Ninth Circuit in case No. 21-15414—a judge of the Eastern District of California found rational a law prohibiting many people convicted of felonies from being certified as emergency medical technicians because "EMTs often deal with vulnerable persons in

---

[4] In line with a few of these cases, *see, e.g.*, *Fields*, 434 P.3d at 1003, Rudy pleaded his due-process claim by invoking the clause's substantive *and* procedural components. Compl. ¶¶ 133–43. The Department's motion discusses substantive Due Process only.

responding to emergencies." 519 F. Supp. 3d 732, 742 (E.D. Cal. 2021). And in *Enigwe v. U.S. Airways/U.S. Airways Express*—an unpublished case—the Third Circuit found it rational to prohibit a probationer who was only two years out from a 15-year drug-importation sentence from working in shipping because of the potential for smuggling drugs or drug money. 438 F. App'x 80, 83, 84 (3d Cir. 2011). But a (lopsided) disagreement only stresses why this case should move forward: only a fact record can settle whether Virginia's barrier is more like the laws upheld in the Department's cases or more like the many laws courts have struck down. For now, on the record of the complaint, nothing suggests substance-abuse counseling involves vulnerable people in acute medical emergencies or an opportunity for crime the way shipping involves an opportunity to distribute drugs.

### B.   *The allegations of the complaint state a claim.*

Rather, taken as true, the complaint more than overcomes the Department's claimed justification for the law. The Department argues the barrier law's sweeping scope is justified because people with barrier convictions—no matter how old or of what type—may not "meet suitability and fitness requirements to hold direct care positions." It argues that they may "impose a risk" to people who need substance-abuse counseling. And it argues that they could "jeopardize the citizenry's confidence in the quality of mental health services." Dep't Br. 21. Set aside that arguments this generic could apply to any job. *See King v. State Bd. of Barber Exam'rs*, 195 A.3d 315, 330 (Pa. Commw. Ct. 2018) (en banc) (rejecting connection between sex crimes and barbering because "the speculative concerns invoked by the Board … would be equally present in other commercial establishments, such as corner grocery or convenience stores"). Many allegations refute this speculation—and the Department does not even mention them.

Contrary to the Department's speculation that people with barrier convictions "do not meet suitability and fitness requirements," the complaint alleges that:

- The barrier law blocks people that the Department itself (when not facing litigation) calls "qualified applicants" with "invaluable" experience, Compl. ¶ 96;

- People with barrier convictions can serve—and have served—as excellent substance-abuse counselors, *id.* ¶ 38; and

- Virginia has certified people with barrier convictions as qualified to perform substance-abuse counseling services (only to then ban them from being hired), *id.* ¶ 79.

Contrary to the Department's speculation that people with barrier convictions "impose a risk" to people who need substance-abuse counseling, the complaint alleges that:

- Substance-abuse counseling does not provide unique opportunities to commit crimes, including assault and battery, *id.* ¶¶ 71–72;

- The barrier law does not protect the public from bad substance-abuse counselors, *id.* ¶ 67;

- Most of the 176 barrier crimes for substance-abuse counselors have nothing to do with substance-abuse counseling, *id.* ¶ 70;

- The barrier crimes that most arguably relate to substance-abuse counseling are eligible for individualized screening, while people with unrelated convictions are banned, *id.* ¶ 81;

- People with barrier convictions can legally volunteer as substance-abuse counselors, and they do so, *id.* ¶¶ 92–93;

- Many people with barrier convictions have been rehabilitated and would present no unique risk to the public if allowed to work as substance-abuse counselors, *id.* ¶ 84; and

- The risk of recidivism becomes minimal after only a few years, *id.* ¶ 86.

14

And contrary to the Department's speculation that allowing some people with barrier convictions to work as substance-abuse counselors would "jeopardize the citizenry's confidence" in mental-health services, the Complaint alleges that:

- There is no evidence of the barrier law protecting the public from bad substance-abuse counselors, *id.* ¶ 67;

- The barrier law *worsens* substance abuse in Virginia by limiting the supply of qualified counselors, *id.* ¶ 68; and

- For most mental-health counseling—that on topics other than substance-abuse outside of licensed treatment facilities—there is no barrier law, *id.* ¶ 75.

Taken together, these allegations state a claim that the barrier law is irrational for substance-abuse counselors. The Department does not even acknowledge these allegations, much less explain how the Court could grant the motion while taking them as true.

### C.  The barrier law is plausibly irrational for many further reasons.

The sufficiency of the allegations is also confirmed by the case law. As the next subsections explain, the barrier law is overbroad in its sweep, rigid in its application, uniquely harsh compared to the laws for other occupations, and inexplicable in its exemptions. Courts have cited all these flaws in invalidating similar employment bans on the merits.

### i.  The ban is overbroad.

To start, the barrier law is irrational because it turns on dozens and dozens of offenses that do not bear on whether someone is fit to work as a substance-abuse counselor.

Shining a laser at a law-enforcement officer. Negligently damaging property by fire. Committing *any* crime to benefit a gang. Threatening the governor. Escaping from a *juvenile* detention facility. Making a bomb threat. Brandishing a BB gun at a school. Tampering with a

prison fire alarm. Recklessly driving a boat while under the influence. *See* Va. Code Ann. § 37.2-416(B)(1) (indirectly citing §§ 18.2-57.01, 18.2-88, 18.2-46.2, 18.2-60.1, 18.2-477.1, 18.2-83, 18.2-282). Rudy does not mean to suggest that these crimes are trivial. But, like many if not all the 176 offenses that can bar someone, they have "nothing to do with substance-abuse counseling." Compl. ¶ 70. And courts routinely recognize that overbroad employment bans are irrational. *See, e.g.*, *Barletta,* 973 F. Supp. 2d at 138 ("Felony crimes range widely, and many do not implicate the purposes identified by the State as justifying the ban."); *Chunn*, 156 So. 3d at 886 ("the statute's broad reach includes many felonies that bear no relationship to trustworthiness"); *Fussenich*, 440 F. Supp. at 1080 ("The critical defect in the blanket exclusionary rule here is its overbreadth.").

To be sure, there are more traditional offenses—such as Rudy's 17-year-old assault conviction—on the list. But the allegation is that those offenses do not relate to substance-abuse counseling. Compl. ¶ 70. If the Department has reason to believe that allowing someone convicted of assault to provide counseling is just like allowing an embezzler to work as an accountant or a drug dealer to work as a pharmacist, the Department will be able to share its reasons in discovery. On the pleadings, however, gesturing at "the health, safety, and general welfare of persons receiving substance abuse counseling," Dep't Br. 21, cannot overcome what Rudy has alleged: that substance-abuse counseling does not provide unique opportunities to commit crimes, including assault and battery. Compl. ¶¶ 71–72.

Put simply, people are banned from substance-abuse counseling because of crimes unrelated to substance-abuse counseling. That is irrational. *See Schware*, 353 U.S. at 239 ("any qualification must have a rational connection with the applicant's fitness or capacity to practice").

ii.     *The ban ignores individual circumstances.*

On top of ignoring the relevance of the type of crime, the barrier law also ignores all the other facts of a particular case. Compl. ¶ 83. Courts routinely reject that kind of mandatory blindness. *See, e.g.*, *Barletta*, 973 F. Supp. 2d at 139 (rejecting a lifetime ban for precious-metals traders because "the ban prohibit[ed] consideration of the nature and severity of the crime, the nature and circumstances of an applicant's involvement in the crime, the time elapsed since conviction, and the degree of the applicant's rehabilitation"); *Fussenich*, 440 F. Supp. at 1080 (rejecting a lifetime ban for private detectives and security guards because "the statute's across-the-board disqualification fail[ed] to consider probable and realistic circumstances in a felon's life, including the likelihood of rehabilitation, age at the time of conviction, and other mitigating circumstances related to the nature of the crime and degree of participation."). Specifics matter.

Take time since commission of the offense. Pennsylvania, for example, used to have a lifetime ban that prevented people with convictions for crimes of moral turpitude from running cigarette wholesalers. *John's Vending*, 309 A.2d at 360–61. But the state supreme court refused to read the ban literally as applied to twenty-year-old convictions because the result was "absurd and harsh." As it explained: "To forever foreclose a permissible means of gainful employment because of an improvident act in the distant past completely loses sight of any concept of forgiveness for prior errant behavior and adds yet another stumbling block along the difficult road of rehabilitation." *Id.* at 362; *see also Fields*, 434 P.3d at 1005 ("Because Fields's sole disqualifying conviction occurred long ago under circumstances that no longer exist, it is highly likely that her permanent disqualification is erroneously arbitrary."). The barrier law—like the Department's motion—ignores the pleaded fact that old convictions are not probative. Compl. ¶¶ 85–86.

Or take rehabilitation. It is not just one "of the goals" of the criminal justice system; it is the "ideal." *Graham v. Florida*, 560 U.S. 48, 71, 73–74 (2010). Just because a person has ever committed a barrier crime does not show "a propensity to engage in serious, sometimes violent, criminal behavior" years or decades later. *Contra* Dep't Br. 21. But the barrier law ignores the pleaded fact—and the Department's own belief—that people can change. Compl. ¶¶ 84–86, 96–97.

Or take age at commission. Usually the law recognizes that young people "have diminished culpability and greater prospects for reform." The Supreme Court has called that "common sense." But flat bans ignore what "any parent knows." *Miller v. Alabama*, 567 U.S. 460, 471 (2012).

The list could go on. There are other aspects of individualized consideration, all of which flat bans like the barrier law ignore. The point is that the lack of case-by-case analysis ensures there will be no rational relationship between the sweeping, categorical restriction and occupational fitness.

### iii.  *The ban is uncommonly harsh.*

More broadly, courts regularly reject bans when there are more lenient rules for other fields with similar risks. And that is the case here: for most occupational regulation in Virginia, criminal history is presumptively *irrelevant*. The usual rule is that convictions, standing alone, are grounds for denial only when they "directly relate[]" to the occupation. Va. Code Ann. § 54.1-204(A). Even then, the state still must assess "[t]he nature and seriousness of the crime," "[t]he amount of time that has elapsed," "[e]vidence of the person's rehabilitation," and six other individualized factors. *Id.* § 54.1-204(B). If barrier laws are not needed for engineers and barbers and auctioneers, it is plausible that they are irrational for substance-abuse counselors. *See*

*Fussenich*, 440 F. Supp. at 1080 ("Finally, the irrationality of the enactment becomes most pronounced when it is compared with another Connecticut statute … which prohibits state agencies (other than law enforcement departments) from rejecting applications for licenses 'solely because of a prior conviction of a crime.'").

Indeed, individualized consideration is the norm in medicine and law—traditionally, the most regulated professions of all. That is an irrational inconsistency. The Department says that "a direct care position in substance abuse counseling presents a counselor with an opportunity to participate in and influence the lives of vulnerable individuals." Dep't Br. 21. But lawyers, too, have the same influence—in divorces and child-custody arrangements and estate planning for the elderly and a dozen other realms. Doctors, for their part, deal with *physically* vulnerable people every day. Pediatricians are alone with children, gynecologists perform pelvic exams, anesthesiologists use drugs to knock people unconscious. Yet, in these fields, Virginia believes a barrier law is unnecessary. 18 VAC 35-10-30 (lawyers); Va. Code Ann. § 54.1-2930 (doctors). So it is at least plausible that a much harsher rule for substance-abuse counselors could be irrational. *See Fussenich*, 440 F. Supp. at 1080 (striking down felony ban for private detectives and security guards in part because there were "no automatic exclusions of felons from the practice of law or medicine"); *Fields*, 434 P.3d at 1005 (finding unconstitutional lifetime robbery-conviction ban as applied to childcare provider in part because there was only a five-year ban on fostering children); *Butts*, 381 F. Supp. at 581 (striking down felony ban for civil-service positions in part because it did not apply to high-level positions like treasurer and city manager).

Most glaringly, Virginia does not even have a barrier law for other kinds of counselors. The Department argues that allowing people with barrier convictions to work as substance-abuse

counselors might "jeopardize the citizenry's confidence in the quality of mental health services in Virginia." Dep't Br. 21. But mental health services in Virginia generally do not have barrier laws. Neither independent professional counselors, nor psychologists, nor marriage and family therapists are subject to one. *See* 18 VAC 115-20-140(A)(1); 18 VAC 125-20-160(1), (8); 18 VAC 115-50-120(A)(1). So if Rudy wanted to work in a private office helping people have a better relationship with a spouse or overcome a gambling addiction, his criminal history would receive individualized consideration. But because he wants to work in a rehab center helping people have a better relationship with alcohol or overcome an opioid addiction, he is barred from working forever. That makes no sense. The complaint alleges that "substance-abuse counseling does not provide more opportunities to commit crime than other kinds of counseling" and that "there is no distinction between substance-abuse counseling and other kinds of counseling that would make it rational to have the barrier-crime ban for only one of them." Compl. ¶¶ 76–77. Those allegations not only support Rudy's due-process claim; they state an equal-protection claim by themselves. *Id.* ¶¶ 124, 127 (pleading this claim).

On the facts alleged, having a barrier law for substance-abuse counselors is irrationally harsh.

### iv. *The ban is riddled with exceptions.*

Finally, another reason the barrier law is plausibly irrational is that it is shot through with arbitrary exceptions. As shown by its own law, Virginia does not really think that barrier convictions lead to bad substance-abuse counseling. And courts reject similarly underinclusive laws as irrational.

For one, the Department grandfathers in most substance-abuse counselors who worked before the barrier law was passed. The barrier law does not apply to people employed as

substance-abuse counselors on July 1, 1999. *See* Va. Code Ann. § 37.2-416(B)(1) (prohibiting hiring, not ongoing employment); *id.* § 37.2-416(A) (exempting new hiring for "person[s] employed prior to July 1, 1999"); *see also* 1999 Virginia Laws Ch. 685 (HB 2572) (original barrier law, codified at former Va. Code Ann. § 37.1-183.3(A), requiring "any applicant who accepts employment" to undergo a criminal history check, beginning "on and after July 1, 1999"). Presumably the idea is that, by the time the bans appeared, there had not been problems with the already-employed counselors with convictions. But "if convicted criminals who had been" working before July 1999 "were capable of essentially rehabilitating themselves so as to qualify them … there should be no reason why other convicted criminals were not, and are not, also capable of doing the same." *Nixon*, 839 A.2d at 289–90 (holding criminal-history ban on working with "the elderly, disabled, and infirm" irrational as applied because of grandfathering clause); *see also Peake*, 132 A.3d at 521 (extending *Nixon* to the statute on its face); *Carter*, 547 F.3d at 1316.

Even worse, for roughly 26 crimes, the barrier law features a strange patchwork of expiration dates and screening exceptions for some convictions but not others. For these offenses, a person with a barrier conviction can be hired if the screening shows "that the criminal behavior was substantially related to the applicant's substance abuse or mental illness and that the person has been successfully rehabilitated and is not a risk to individuals receiving services based on his criminal history background and his substance abuse or mental illness history." Va. Code Ann. 37.2-416(C).

Most irrationally, the barrier law somehow allows these screenings for *all* simple assaults, *id.* § 37.2-416(C), even if the applicant committed the assault "while employed in a direct care position," *cf.* § 37.2-416(F). At the same time, assault and battery on a public official

is not eligible for screening (without a gubernatorial pardon). *Id.* § 37.2-416(D). So if Rudy had worked in a direct-care position in 2004, been high on the job, and assaulted a patient because of his drug addiction, he would be eligible to work today after a screening. But because he instead hit a police officer because of his drug addiction in circumstances that have nothing to do with substance-abuse counseling, he is barred from working forever.

Similarly, although it is not clear on the pleadings what, if any, crimes relate to substance-abuse counseling in the abstract, one might suppose that felony drug possession has the closest connection. But that crime is only a barrier for five years. *Id.* § 37.2-416(B)(1) (indirectly citing felony violations of § 18.2-250). After that, a person convicted of drug possession can work as a counselor without a screening. And many other, more serious drug offenses are still screenable. *Id.* § 37.2-416(C) (citing § 19.2-392.02(A)(iii)). Contrast that with a teenager who possesses a nude photo *of herself*. She remains banned for life. *Id.* § 37.2-416(B)(1) (indirectly citing § 18.2-374.1:1).

More broadly, there is little rhyme or reason controlling which offenses are and are not screenable. Reckless endangerment by throwing objects from two stories or higher is screenable; recklessly driving a boat while under the influence is not. *Compare id.* § 37.2-416(C) (allowing screening for convictions under § 18.2-51.3) *with id.* § 37.2-416(B)(1) (prohibiting convictions under § 18.2-51.5). Hazing in a fraternity is screenable; hazing in a gang is not. *Compare id.* § 37.2-416(C) (allowing screening for convictions under § 18.2-56) *with* § 37.2-416(B)(1) (prohibiting convictions under § 18.2-55.1). Brandishing a firearm in most places is screenable; brandishing a BB gun at school is not. *Id.* § 37.2-416(C) (allowing screening only for misdemeanor convictions under § 18.2-282). Threatening a teacher is screenable; threatening the Governor is not. *Compare id.* § 37.2-416(C) (allowing screening for convictions under § 18.2-

60) *with id.* § 37.2-416(B)(1) (prohibiting convictions under § 18.2-60.1). In many cases, the conduct could even be the same. But "the fortuity of plea bargaining … depending on the quality of legal counsel, the exercise of prosecutorial discretion, and the proclivities of different judges," will lead to different results. *Barletta*, 973 F. Supp. 2d at 139.

Rudy is not saying the Constitution requires perfect line drawing. But at the pleading stage, it is at least plausible that a law this haphazard—which forever bans Rudy from caring for patients because he struck a police officer *instead of a patient*—really is irrational.

### D. There are no technical defects in the equal-protection claim.

Finally, before the discussion of Rudy's as-applied claim, two of the Department's technical objections to the equal-protection claim merit a brief discussion.

The first is the Department's passing suggestion that an equal-protection claim requires an allegation of "malice and bad faith." Dep't Br. 16. This is just a misreading of a single sentence in an unpublished decision. That case, *Greenspring Racquet*, states the obvious point that when a law's only conceivable bases are malice and bad faith, that is *sufficient* to fail the rational basis test. *Greenspring Racquet Club, Inc. v. Baltimore County*, 232 F.3d 887 (4th Cir. 2000) (table). *Greenspring Racquet* does not say that "malice and bad faith" are *necessary* for a rational-basis claim—a rule that would upend landmark Supreme Court cases like *Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975). Rather, rational-basis, and, indeed, all equal-protection claims simply require "intentional or purposeful" (rather than negligent) discrimination. The Department appears to agree. Dep't Br. 15. And that criterion is met here because the operation of the barrier law is, of course, intentional action by the state. *See, e.g.*, *Morrison v. Garraghty*, 239 F.3d 648, 657–58 (4th Cir. 2001) (concluding that operation of irrational prison policy was "intentional and purposeful").

The second technical objection is that Rudy cannot bring an equal-protection claim because he "and other aspiring substance abuse counselors with barrier crime convictions are not similarly situated to persons without barrier crime convictions." Dep't Br. 14. Even if this were right, Rudy would still have a functionally identical irrationality claim under the substantive Due Process Clause. But the Department is not right. Rather, it cites dicta from cases about sex-offender registration rather than employment restrictions. *Id.* And, ultimately, it simply ignores the well-pleaded factual claim that there is *not* a reason to distinguish between aspiring substance-abuse counselors with and without barrier convictions. This it cannot do. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 609–10 (4th Cir. 2020) (rejecting the argument that a transgender boy was similarly situated to natal girls because the defendant's "framing" of the equal-protection claim contradicted the fact record).[5] If this kind of "similarly situated" judo were all it took to topple an equal-protection claim, plaintiffs would never win their challenges to these kinds of bans. But they do. See *Chunn*, 156 So. 3d at 884; *Barletta*, 973 F. Supp. 2d at 132; *Furst*, 631 F. Supp. at 1331; *Kindem*, 502 F. Supp. at 1108; *Butts*, 381 F. Supp. at 573; *Fussenich*, 440 F. Supp. at 1077; *Gregg*, 732 F. Supp. at 849. The Department cannot be right unless every one of these cases is wrong.

In any event, at a bare minimum, aspiring substance-abuse counselors are at least similarly situated to two groups discussed in Argument sections C.iii and C.iv: (1) aspiring counselors of other kinds—such as would-be independent professional counselors, psychologists, and marriage and family therapists—who have barrier convictions but who do not

---

[5] *See also Willis v. Town of Marshall*, 426 F.3d 251, 263–64 (4th Cir. 2005) (reversing summary judgment for town because existence of others similarly situated to plaintiff was a question of fact); *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) ("Whether two employees are similarly situated ordinarily presents a question of fact for the jury.").

face a barrier law and (2) substance-abuse counselors who work despite barrier convictions. As to the latter, "[a]n applicant … who has committed one of the described felonies and a [counselor] who has done the same are similarly situated, and no justification exists for automatically disqualifying one and not the other." *Carter*, 547 F.3d at 1316; *see also Nixon* 839 A.2d at 277 (finding criminal history ban irrational because of grandfathering clause); *Peake*, 132 A.3d at 506 (same).

### III. The barrier law is irrational as applied to Rudy.

Beyond the broader as-applied claims, the barrier law is especially likely to be irrational as applied to Rudy. *See, e.g.*, *Fields*, 434 P.3d at 1001 (striking down criminal-history ban as applied to plaintiff); *Chunn*, 156 So. 3d at 889 (same). Rudy pleaded that allowing him to work "would not pose any risk to the public." Compl. ¶ 103. Rather, allowing him to work "would benefit the public." *Id.* ¶ 104. And he alleged more than enough facts to make those allegations plausible. When this Court considers relevance, time since commission, rehabilitation, and all the factors other courts assess, it will see that the barrier law might be irrational for at least this specific plaintiff.

*Relevance.* Rudy struck a police officer while he was high because he was desperate to run away so he could get more drugs. *Id.* ¶ 18. Assault is serious and blameworthy. Still, it is unrelated to "influenc[ing] the lives of vulnerable individuals" or "threaten[ing] the health, safety, and general welfare of persons receiving substance abuse counseling." Dep't Br. 21. Hitting a police officer while high does not seriously suggest that Rudy would negatively influence or attack a person that he only encountered in the first place because of a desire to help people overcome addiction. *See Johnson*, 59 A.3d at 13–14 (rejecting that counselor's voluntary manslaughter conviction was rationally related to the possibility of him killing the young fathers he counseled); *Warren County*, 844 A.2d at 74 (rejecting that a CPS caseworker's aggravated

assault conviction was rationally related to the possibility of him attacking the children he

helped); *Fields*, 434 P.3d at 1001 (rejecting that childcare worker's robbery conviction was

sufficiently related to the possibility of her robbing the children in her care).

*Time since commission*. Rudy's sole barrier crime is 17 years old. Compl. ¶ 18. Courts

discount convictions from this long ago. *See John's Vending*, 309 A.2d at 490 (invalidating

criminal-history ban for convictions about 20 years old); *Johnson*, 59 A.3d at 24 (noting for

these kinds of bans that "seven years is a substantial interval of time").

*Rehabilitation*. Finally, as pleaded, the evidence of rehabilitation is overwhelming. Rudy

turned his life around more than a decade ago. Compl. ¶¶ 22–25. He has not been convicted of

any crimes for 17 years. *Id.* ¶ 27. He has helped the homeless, volunteered with at-risk youth,

and been invited to speak at drug courts. *Id.* ¶¶ 30–32. He has studied counseling in school. *Id.*

¶ 34. He worked as a well-regarded substance-abuse counselor for five years. *Id.* ¶ 38. If

rehabilitation exists, it's this. There's no clearer statement than one from Rudy's former boss.

She would "hire him again in a heartbeat." *Id.* ¶ 116.

These allegations far exceed "speculative." Again, for all the reasons discussed, it is

plausible that the barrier law fails for all would-be substance-abuse counselors. But if does not—

if the state can impose this kind of scarlet letter—it is at least plausible that it cannot forever

mark applicants with histories like Rudy's.

**CONCLUSION**

This is a motion to dismiss. The Department is not saying that it might win at summary judgment or convince a factfinder. It is saying it wins so obviously—right now—that Rudy should not even have a chance to prove his claims. Never mind that courts routinely strike down lifetime bans. Never mind that the law blocks people with experience the Department itself calls "invaluable." Never mind that a lifelong ban turns on the subject under discussion and the room where it's discussed. Never mind that the standard is more forgiving for counselors who commit assault on the job. It still is not even *plausible* that the barrier law is irrational.

To win on the pleadings, that is the argument the Department would have the Court accept. That argument is wrong. The motion to dismiss should be denied.

DATED this 13th day of December, 2021.

Respectfully submitted,

/s/ Paul Sherman

Paul Sherman (psherman@ij.org; VA Bar No. 73410)
Andrew Ward* (ahward@ij.org; NY Bar No. 5364393)
Michael Greenberg* (mgreenberg@ij.org; DC Bar No. 1723725)
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, VA 22203
Tel: (703) 682-9320
Fax: (703) 682-9321

*Attorneys for Plaintiff*
*\*Admitted Pro Hac Vice*